<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT SKORUPSKI, *et al.*, | |
| Plaintiffs, | Civil Action No: 22-3804 (SDW) (JBC) |
| v. | **OPINION** |
| LOCAL 464A UNITED FOOD AND COMMERCIAL WORKERS WELFARE SERVICE BENEFIT FUND, *et al.*, | March 20, 2023 |
| Defendants. | |

**WIGENTON**, District Judge.

Before this Court is Defendants Local 464A United Food and Commercial Workers Welfare Service Benefit Fund ("Welfare Fund") and the Joint Board of Trustees, United Food and Commercial Workers International Union Local 464A's ("Defendants") Motion to Dismiss (D.E. 5 ("Motion to Dismiss"))[1] Plaintiffs Robert Skorupski ("R. Skorupski") and Stacy Skorupski's ("S. Skorupski," together with R. Skorupski, "Plaintiffs") Complaint (D.E. 1 ("Complaint")), pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  In accordance with Rule 12(d), this Court converted Defendants' Motion to Dismiss into a motion for summary judgment under Rule 56.  (D.E. 11.)  Jurisdiction is proper pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e).  Venue is proper pursuant to 28 U.S.C. § 1391 and 29 U.S.C. § 1132(e).  This opinion is issued

---

[1] Citations to "D.E." refer to the docket entries for the Complaint and the parties' motion papers, including briefs, affidavits, declarations, and the documents attached thereto.

1

without oral argument pursuant to Rule 78. For the reasons stated herein, Defendants' motion for summary judgment (D.E. 5, 13 ("Motion for Summary Judgment")) is **GRANTED**.

I. <u>**FACTUAL AND PROCEDURAL HISTORY**</u>[2]

This suit arises from the Welfare Fund's refusal to pay Plaintiffs' medical bills. Between March and December 2020, S. Skorupski suffered from bouts of severe abdominal pain, nausea, vomiting, and other symptoms. (D.E. 5-5 at 2–4.) After several hospitalizations and treatments for alcohol-induced pancreatitis, S. Skorupski was diagnosed with pancreatic duct disruption and thereafter underwent surgery, which cured her ailments. (*Id.*) S. Skorupski's treatments came at a substantial cost—in total, Plaintiffs allegedly amassed $581,381.13 in medical bills. (D.E. 1 ¶¶ 11–12.) Because S. Skorupski's "treatment of pancreatitis [w]as related to alcohol use or misuse, an exclusion of the Plan," the Welfare Fund refused to pay Plaintiffs' expenses. (D.E. 5-6 at 2; D.E. 5-8 at 2.) The Board upheld on appeal the decision to deny Plaintiffs' claim for benefits. (D.E. 5-8 at 2.) Plaintiffs disagreed with that determination and filed the instant suit. (*See generally* D.E. 1.)

A. The Welfare Fund

R. Skorupski is a participant in the Welfare Fund, an employee welfare benefit fund governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and administered by the Board. (D.E. 13-1 ¶¶ 1, 3–4.) S. Skorupski, R. Skorupski's wife, is a beneficiary of the Welfare Fund. (*Id.* ¶ 1.) According to the Welfare Fund's summary plan description, (D.E. 5-4 (the "Plan")), the Welfare Fund "provide[s] generally for [beneficiaries'] medical, surgical, hospital, maternity, X-ray, and laboratory, dental, vision, prescription drugs,

---

[2] The facts derive largely from the Exhibits submitted with Defendants' Motion to Dismiss, which contains the full record of documents that the Welfare Fund's Board of Trustees ("Board") reviewed in denying Plaintiffs' claim for benefits. (D.E. 5-3 ¶¶ 11, 14.)

2

accident, dismemberment and death benefits," (*id.* at 10).  The Plan explains that "[t]he entire cost of the coverage is paid from the contributions that employers make to the [Welfare Fund]."  (*Id.* at 3; D.E. 13-1 ¶ 5.)  The Plan, however, excludes certain diagnoses and treatments from coverage, (D.E. 5-4 at 7–8)—for example, the Plan does not cover "[h]ealthcare services provided in connection with or in treatment for alcoholism, alcohol abuse, and/or alcohol use or misuse . . . [and] any treatment for any condition that is related to such a primary, secondary or tertiary diagnosis or any other condition resulting therefrom," (*id.* at 8; D.E. 13-1 ¶ 7).

The Plan outlines procedures for beneficiaries and their assignees to submit claims for benefits and, if applicable, to appeal a denial of benefits.  (D.E. 5-4 at 4–6; D.E. 13-1 ¶ 9.)  When a beneficiary accrues medical bills, she, or her "authorized representative[,] may file claims for benefits with the [Welfare Fund] . . . within 90 days following receipt of the healthcare service, treatment or product to which the claim relates."  (D.E. 5-4 at 4.)  The Welfare Fund, then, must render a decision on the beneficiaries' claims for benefits "within 30 days of receipt of such claims."  (*Id.* at 5.)  Once a decision is reached, the Welfare Fund notifies the beneficiaries in writing.  (*Id.*)  If a beneficiary disagrees with the Welfare Fund's benefits determination, the beneficiary "must appeal the [Welfare Fund's] decision within 180 days of receiving the notification of the [Welfare Fund's] decision on the claim." (*Id.*)

The Board is tasked with resolving, "in accordance with the written terms of the Plan and the Trust Agreement," any appeals about a beneficiary's claim, "including eligibility . . . and all other issues."  (*Id.* at 6.)  "The [Board has] the right, in [its] sole discretion, to interpret and construe the terms and provisions of the Plan and Trust documents."[3]  (*Id.* at 6; D.E. 13-1 ¶ 6.)  If the Board

---

[3] Indeed, the Plan further imbues the Board with:

> full power and discretion to interpret the Plan and all documents, agreements, rules and regulations concerning the Plan, including, but not limited to, the eligibility of any person to participate in the

3

upholds a denial of benefits on appeal, a beneficiary "ha[s] the right to bring an action for benefits against the Plan under Section 502(a) of ERISA . . . within 1 year of the date of the denial of [the beneficiary's] claim." (D.E. 5-4 at 6.)

### B. S. Skorupski's Treatment

In late March 2020, S. Skorupski began intermittently experiencing several symptoms, including fever, nausea, diarrhea, vomiting, abdominal, and lower-back pain. (D.E. 5-5 at 2.) By early April 2020, S. Skorupski's symptoms had worsened. (*Id.*) In the weeks that followed, S. Skorupski attended at least two appointments with her general physician, Dr. María Pantano, who diagnosed S. Skorupski with a stomach virus. (*Id.* at 2–3.) S. Skorupski's symptoms did not improve. (*Id.*)

On or around May 10, 2020, S. Skorupski called 9-1-1 after experiencing "excruciating pain, along with vomiting (dry heaving) and diarrhea." (*Id.* at 3.) S. Skorupski was transported by ambulance to the Emergency Room at Holy Name Medical Center, where doctors diagnosed her with pancreatitis "related to her alcohol consumption." (*Id.* at 3, 6.) S. Skorupski admitted that, in the months before her symptoms began, she would consume a "usual nightcap," consisting of vodka mixed with "seltzer or sugar[-]free iced tea," (*id.* at 2); and during her May 2020 hospitalization, S. Skorupski told doctors that she drank "2-5 [ounces] of vodka before bedtime prior to admission," (*id.* at 7). According to Plaintiffs, S. Skorupski ceased all alcohol consumption after her May 10, 2020 diagnosis. (*Id.* at 3.) Nonetheless, in the ensuing months, S.

---

Plan and his or her entitlement to Plan benefits. The Board's interpretations and decisions concerning these matters are final and conclusive, so long as they are made in good faith and are not arbitrary or capricious. The provisions of the contracts between the Plan and any healthcare provider organizations are controlling and are incorporated herein by reference.

(*Id.* at 3.)

Skorupski had several more emergency visits to the hospital, during which doctors frequently related her symptoms to alcohol use or misuse. (*Id.* at 3–4, 6–7, 18, 22; D.E. 5-7 at 14–30.) Each time S. Skorupski was admitted to the hospital, doctors administered a similar treatment regime[4]; but each time she was discharged, she returned shortly thereafter with similar symptoms. (D.E. 5-5 at 3, 14; D.E. 5-7 at 10–12.)

In September 2020, Dr. Amrita Sethi performed an endoscopic procedure on S. Skorupski. (D.E. 5-5 at 4, 18–25.) Upon reviewing the results, Dr. John Poneros discovered a tear in S. Skorupski's pancreatic bile duct. (*Id.*) Doctors immediately performed a procedure to repair the torn pancreatic bile duct. (*Id.*) That procedure—along with subsequent treatment—remedied S. Skorupski's symptoms, and she has "felt healthy since." (*Id.* at 4, 15–17.)

### C. Defendants Deny Plaintiffs' Claim for Benefits

Between March and December 2020, Plaintiffs allegedly accrued $581,381.13 in medical bills. (D.E. 1 ¶¶ 11–12.). Plaintiffs submitted the bills to the Welfare Fund, but their claim for benefits was denied pursuant to an exclusion of the Plan. (D.E. 5-6 at 2.) Specifically, because S. Skorupski's diagnosis and subsequent treatment stemmed, at least in part, from alcohol use or misuse, the Welfare Fund refused to cover her medical bills. (*Id.*) Plaintiffs appealed that denial of benefits to the Board, but the Board upheld the decision. (*Id.*; D.E. 5-8 at 2.)

On June 14, 2022, Plaintiffs filed the Complaint in which they allege that Defendants wrongfully denied Plaintiffs' claim for benefits, breached their fiduciary duties to Plaintiffs, and violated ERISA and the terms of the Plan. (*See generally* D.E. 1.) On August 2, 2022, Defendants filed the Motion to Dismiss pursuant to Rule 12(b)(6). (D.E. 5.) In briefing the Motion to Dismiss, each party submitted exhibits for this Court's consideration. (D.E. 5, 6, 7.) On February 22, 2023,

---

[4] According to Plaintiffs, S. Skorupski's hospital stays lasted six days on average. (D.E. 5-5 at 3.)

this Court converted the Motion to Dismiss into a motion for summary judgment and, in accordance with Rule 12(d), permitted the parties an opportunity to "submit supplemental briefing regarding any additional materials relevant to" the Motion for Summary Judgment.[5]  (D.E. 11.)  The parties timely completed supplemental briefing.  (D.E. 12, 13.)

## II.     LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law."  *Id.* at 248.  A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

---

[5] This Court has discretion to accept and consider matters outside the pleadings and then convert the motion to dismiss into one for summary judgment.  *United States v. Est. of Elson*, 421 F. Supp. 3d 1, 5 (D.N.J. 2019) ("The decision whether to convert a motion to dismiss into a [motion for] summary judgment . . . is a discretionary one." (citing *Telfair v. Tandy*, No. 08-731, 2009 WL 2132433, at *3 (D.N.J. July 13, 2009)).  "The reason that a court must convert a motion to dismiss to a summary judgment motion if it considers extraneous evidence submitted by the defense is to afford the plaintiff an opportunity to respond."  *Bruni v. City of Pittsburgh*, 824 F.3d 353, 360–61 (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).  Accordingly, a district court must give the parties notice before it converts a motion to dismiss into a motion for summary judgment and renders a decision.  *Bruni*, 824 F.3d at 360 ("If other 'matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.'  When that occurs, '[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.'"  (alteration in original) (quoting Fed. R. Civ. P. 12(d))).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must "set forth specific facts showing the existence of . . . an issue for trial." *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001) (citing FED. R. CIV. P. 56(e)). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his [or her] favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). Further, the nonmoving party is required to "point to concrete evidence in the record [that] supports each essential element of its case." *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004) (citing *Celotex Corp.*, 477 U.S. at 322–23)). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof[,]" then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322–23. In deciding the merits of a party's motion for summary judgment, the court's role is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. The nonmoving party cannot defeat summary judgment simply by asserting that certain evidence submitted by the moving party is not

credible. *S.E.C. v. Antar*, 44 F. App'x 548, 554 (3d Cir. 2002) (citing *Schoonejongen v. Curtiss-Wright Corp.*, 143 F.3d 120, 130 (3d Cir. 1998)).

### III.  DISCUSSION

The Welfare Fund is governed by ERISA, (D.E. 13-1 ¶ 3), and Plaintiffs accordingly assert several claims thereunder, (*see generally* D.E. 1). "Section 502(a)(1)(B) of ERISA creates a civil cause of action for a plan participant 'to recover benefits due to him [or her] under the terms of his [or her] plan, to enforce his [or her] rights under the terms of the plan, or to clarify his [or her] rights to future benefits under the terms of the plan.'" *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012). Meanwhile, Section 502(a)(3) serves as a general "'catchall' . . . offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996); *see also Fotta v. Trs. of United Mine Workers of Am., Health & Ret. Fund of 1974*, 165 F.3d 209, 211 (3d Cir. 1998) ("ERISA section 502(a)(3)(B) permits a plan beneficiary 'to obtain other appropriate relief (i) to redress [violations of ERISA or of the terms of an ERISA plan] or (ii) to enforce any provisions of this subchapter or the terms of the plan.'" (alteration in original) (quoting 29 U.S.C. § 1132(a)(3)(B))). Although the Complaint is unclear, Plaintiffs assert claims for benefits under Section 502(a)(1)(B) and seemingly for additional equitable relief under Section 502(a)(3).[6] (D.E. 1 ¶¶ 15–16, 18–20.)

#### A. 502(a)(1)(B) Claim

Plaintiffs argue that a material dispute of fact exists with respect to the Welfare Fund's determination "that alcohol use, along with other factors, was a contributing factor or cause of her

---

[6] The Complaint seeks relief on behalf of only the individual Plaintiffs. (*See generally* D.E. 1.) Therefore, Plaintiffs cannot bring claims under Section 502(a)(2), which "does not provide a remedy to individual beneficiaries." *Engers v. AT&T*, 428 F. Supp. 2d 213, 235 (D.N.J. 2006) (citing *Varity Corp.*, 516 U.S. at 515).

8

medical conditions." (D.E. 12 at 8.)  That argument misconstrues this Court's standard of review. Because the Plan imbues the Board with "full power and discretion" to interpret the terms of the Plan and beneficiaries' eligibility for benefits under the Plan, (D.E. 5-4 at 3), this Court's review of such actions by the Board is constrained to the deferential arbitrary and capricious standard. *Fleisher*, 679 F.3d at 120–21 (discussing the arbitrary and capricious standard of review of administrator actions); *see also Lipstein v. UnitedHealth Grp.*, 296 F.R.D. 279, 293 (D.N.J. 2013) ("In an ERISA case, where 'the administrator has discretionary authority to determine eligibility for benefits, . . . the decision must be reviewed under an arbitrary and capricious standard.'" (alteration in original) (quoting *Doroshow v. Hartford Life & Accident Ins. Co.*, 574 F.3d 230, 233 (3d Cir. 2009))).  Similarly, "when an administrator acts pursuant to her authority 'to construe the terms of the plan,' or 'to act as a finder of facts,' [courts] also apply the arbitrary and capricious standard when reviewing those interpretations and factual findings."  *Fleisher*, 679 F.3d at 121 (internal citations omitted).  The Third Circuit has explained that "[a]n administrator's decision is arbitrary and capricious if it is without reason, unsupported by substantial evidence or erroneous as a matter of law."  *Addington v. Senior Vice President Hum. Res. Consol. Energy, Inc.*, 841 F. App'x 443, 447 (3d Cir. 2020) (citing *Fleisher*, 679 F.3d at 121).  "Substantial evidence" is defined as "relevant evidence that 'a reasonable mind might accept as adequate.'"  *Id.* (quoting *Fleisher*, 679 F.3d at 121).  Crucially, the district court's "scope of review is narrow, and 'the court is not free to substitute its own judgment for that of the [administrator] in determining eligibility for plan benefits.'"  *Martorana v. Board of Trs. of Steamfitters Loc. Union 420 Health, Welfare & Pension Fund*, 404 F.3d 797, 801 (3d Cir. 2005) (alteration in original) (quoting *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 439 (3d Cir. 1997)).

As an initial matter, Defendants' interpretation of the Plan's exclusion for alcohol-induced conditions was not arbitrary and capricious. (D.E. 5-4 at 8.) The Plan expressly excludes from coverage "[h]ealth care services provided in connection with or in treatment for alcoholism, alcohol abuse, and/or alcohol use or misuse," and "any treatment for any condition that is related to such a primary, secondary or tertiary diagnosis or any other condition resulting therefrom." (*Id.*) The Board broadly interprets that exclusion to bar coverage when "alcohol use, along with other factors, is a contributing factor or cause of the condition." (D.E. 5-3 ¶ 8.) That interpretation of the unambiguous Plan terms is "'reasonably consistent' with the [P]lan's text." *Bergamatto v. Bd. of Trs. of the NYSA-ILA Pension Fund*, 933 F.3d 257, 264 (3d Cir. 2019) (quoting *Dowling v. Pension Plan for Salaried Emps. of Union Pac. Corp. & Affiliates*, 871 F.3d 239, 245 (3d Cir. 2017)).

Likewise, Defendants' decision to deny Plaintiffs' claim for benefits was not arbitrary and capricious, because it was supported by substantial evidence: S. Skorupski admitted that, before her symptoms began in March 2020, she drank a "usual nightcap" containing vodka, (D.E. 5-5 at 2); during her May 2020 hospitalization, S. Skorupski told doctors that she consumed "2–5 [ounces] of vodka before bedtime prior to admission," (*id.* at 7); and several of the medical reports filed by S. Skorupski's doctors indicate that her treatment was due, at least in part, to alcohol-induced pancreatitis, (*id.* at 6–7, 18, 22; D.E. 5-7 at 14–30). On appeal to the Board, Plaintiffs did not present any additional medical evidence to contradict the decision to deny Plaintiffs' claim. Rather, in support of their appeal, Plaintiffs provided medical research from the internet, (D.E. 5-5 at 27–45), along with supplemental letters from doctors suggesting that S. Skorupski's pancreatic duct disruption could have had other primary causes, (*id.* at 6, 7, 14). None of the additional

10

evidence presented by Plaintiffs, however, refuted the Board's finding that S. Skorupski's pancreatic duct disruption was caused, *at least in part*, by alcohol use or misuse.[7]

Plaintiffs contend that the supplemental letters submitted by S. Skorupski's doctors disprove the Board's determinations.  (D.E. 7-1 ¶¶ 2, 4–11.)  S. Skorupski's doctors, though, only offered possible, additional causes for Plaintiffs' conditions.[8]  (D.E. 5-5 at 6–7, 14).  Importantly, none of those supplemental letters stated that her conditions were *not* caused, at least in part, by alcohol use or misuse.  When considering the vague opinions in the supplemental letters alongside the several medical records indicating that S. Skorupski had alcohol-induced pancreatitis, this Court cannot find that the Board's decision was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Addington*, 841 F. App'x 447 (citing *Fleisher*, 679 F.3d at 121).  Consequently, Defendants' Motion for Summary Judgment will be granted as to Plaintiffs' claim under Section 502(a)(1)(B).

### B. 502(a)(3) Claims

To the extent Plaintiffs seek relief under Section 502(a)(3), those claims fail as a matter of law.  Section 502(a)(3) permits beneficiaries of an ERISA plan to bring a civil action to remedy violations of ERISA or the plan terms, or to enforce any provisions of ERISA or the plan.  29 U.S.C. § 1132(a)(3); *Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 86 (3d Cir. 2012).  Plaintiffs may

---

[7] Indeed, the medical research presented by Plaintiffs indicated that alcohol abuse causes pancreatitis, which in turn causes pancreatic duct disruption.  (*Id.* at 27–45.)

[8] For example, in a letter dated February 9, 2021, Doctors Addi Znamensky and Anna Lavotshkin wrote:

> At the time of [S. Skorupski's May 2020] admission [to the hospital,] it was thought that her pancreatitis was related to her alcohol consumption as stated in the notes "likely related to alcohol." However, other causes are strongly correlated with pancreatitis as well, including obesity and gastric bypass status as well as hyperlipidemia, especially elevated triglyceride levels.  It is possible that these were the primary drivers in the onset of the patient's pancreatitis.

(D.E. 5-5 at 6.)

also pursue claims under Section 502(a)(3) to redress an administrator's breach of fiduciary duty. *Bixler v. Cent. Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1298 (3d Cir. 1993) ("'Section 502(a)(3) authorizes the award of "appropriate equitable relief" directly to a participant or beneficiary to "redress" "*any* act or practice which violates *any* provision of this title"' including a breach of the statutorily created fiduciary duty of an administrator." (alterations in original) (quoting *Mass. Mut. Life. Ins. Co. v. Russell*, 473 U.S. 134, 153 (1985) (Brennan, J., concurring))). The remedy for suits brought under Section 502(a)(3), however, is limited to "appropriate equitable relief," which means "those categories of relief that were *typically* available in equity." *Great-West Life & Ann. Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (alteration in original) (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993)).

    i.    *Violations of ERISA*

Plaintiffs contend that Defendants' decision to deny Plaintiffs' claims "violated . . . the terms of the Plan, and Ms. Skorupski's rights under the Plan and governing law." (D.E. 1 ¶ 15.) As a result, Plaintiffs seek, *inter alia*, "a declaratory judgment to determine that the bills incurred by Mrs. Skorupski are covered under the Plan, . . . and to determine that the defendants are liable to pay her medical, hospital, and doctor's bills." (D.E. 1 ¶ 16.) Plaintiffs' claim fails for several reasons.

First, Plaintiffs have failed to identify any specific provision of ERISA or terms of the Plan that Defendants have allegedly violated.[9] Second, even if Plaintiffs' claims pursuant to Section 502(a)(3) had merit, Plaintiffs seek only monetary relief. Plaintiffs cannot disguise their claim for damages under 502(a)(1)(B) as one for declaratory relief under 502(a)(3). Indeed, the Supreme

---

[9] To the extent Plaintiffs argue that exclusions for conditions caused by alcohol use or misuse violate ERISA, Plaintiffs have not pointed to any statutory or other authority on point.

12

Court has squarely held that "an injunction to compel the payment of money past due under a contract, or specific performance of a past due monetary obligation," does not constitute "appropriate equitable relief" for purposes of Section 502(a)(3). *Knudson*, 534 U.S. at 210–11. Where, as here, plaintiffs "are seeking legal relief—the imposition of personal liability on respondents for a contractual obligation to pay money—§ 502(a)(3) does not authorize this action." *Id.* at 221. Therefore, Defendants' Motion for Summary Judgment will be granted as to Plaintiffs' claims brought under Section 502(a)(3) to remedy alleged violations of ERISA.

    i.    *Breach of Fiduciary Duty*

Plaintiffs' claim for breach of fiduciary duty under Section 502(a)(3) fails for similar reasons. Again, the Complaint does not identify any fiduciary duty that Defendants allegedly breached. (*See, e.g., id.* ("Defendants breached . . . all fiduciary duties arising under ERISA by denying the payment of medical bills and expenses submitted by plaintiff, Stacy Skorupski as aforesaid.")) And, in any event, the Complaint seeks only monetary relief for Defendants' breach of the unspecified duty. (*Id.* ¶ 20 ("Plaintiffs bring this action to obtain a declaratory judgment to determine that the bills incurred by Mrs. Skorupski are covered under the Plan . . . and to determine that the [D]efendants are liable to pay her medical, hospital, and doctor's bills referred to above.")). Thus, Plaintiffs' breach of fiduciary duty claim is indistinguishable from Plaintiffs' claim for benefits. *See, e.g., Lipstein*, 296 F.R.D. at 299; *see also Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 254 (3d Cir. 2002) ("A claim for breach of fiduciary duty is 'actually a claim for benefits where the resolution of the claim rests upon an interpretation and application of an ERISA-regulated plan rather than an interpretation and application of ERISA.'" (quoting *Smith v. Sydnor*, 184 F.3d 356, 362 (4th Cir. 1999))); *see also Knudson*, 534 U.S. at 221 ("Because [Plaintiffs] are seeking legal relief—the imposition of personal liability on [Defendants] for a contractual

obligation to pay money—§ 502(a)(3) does not authorize this action."). Accordingly, Defendants' Motion for Summary Judgment will be granted as to Plaintiffs' claim for breach of fiduciary duty.[10]

### IV. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is **GRANTED**. An appropriate order follows.

          /s/ Susan D. Wigenton
          **SUSAN D. WIGENTON, U.S.D.J.**

Orig:      Clerk
cc:        James B. Clark, U.S.M.J.
            Parties

---

[10] In their brief in opposition to Defendants' Motion to Dismiss, Plaintiffs improperly requested leave to file an amended complaint, (D.E. 7 at 10), and improperly filed a cross motion seeking leave to file an amended complaint, (*see generally* D.E. 8). As Magistrate Judge Clark explained, "Plaintiffs' motion to amend fail[ed] to comply with Local Civil Rule 7.1. . . ." (D.E. 10 at 1.) This Court notes, too, that Plaintiffs' submission did not comply with Local Rule 15.1, which requires Plaintiffs to attach "a form of the amended [complaint] that shall indicate in what respect(s) it differs from the pleading which it proposes to amend, by bracketing or striking through materials to be deleted and underlining materials to be added." L. Civ. R. 15.1(a)(2). Even if Plaintiffs had complied with the relevant Local Rules, their proposed Amended Complaint (D.E. 8-1 at 3–9) would be futile for the reasons already stated in this Opinion. Specifically, Plaintiffs' proposed amendments to the "Wherefore Clause," (*id.* at 7, 9; D.E. 7 at 10), would amount to no more than "lawyerly inventiveness" to rephrase their "claim for legal relief . . . in terms of an injunction." *Knudson*, 534 U.S. at 211 n.1. Section 502(a)(3) plainly does not authorize such an action. *Id.* at 221.